BUD HAMILTON *v.* THE STATE.

1. NOCTURNAL BURGLARY WITH INTENT TO RAPE — INTERPRETATION OF THE CODE.— The Penal Code, article 704, makes it burglary to enter a house at night by force, threats or fraud, with intent to commit felony or theft, and further provides (in article 706) that the entry into a house, within the meaning of article 704, "includes every kind of entry but one made by the free consent of the occupant," etc. *Held*, that this latter provision is not to be so construed as to eliminate from the definition of the offense the element of "force, threats, or fraud," nor to dispense with the necessity of alleging and proving that the entry was effected by some one or more of those modes. It does not suffice, therefore, to allege and prove an entry made without the consent of the occupant or of some one authorized to give consent; but some one of the statutory modes of entry, as well as the fact of entry, must be alleged and proved in order to constitute the offense. Note in the opinion a collocation of the articles of the Penal Code which affect this question, and the elucidation of their import and interdependence.

2. SAME — ENTRY EFFECTED BY FRAUD.— Appellant was convicted of burglary on an indictment which charged a nocturnal entry effected by fraud. The evidence relied on to prove the entry and fraud

tended to show that he took off his shoes and entered through an open door, without the consent of anyone. *Held*, not sufficient to prove that the entry was effected by fraud.

3. SAME — WITH INTENT TO COMMIT A RAPE BY FORCE.— The intent alleged was to commit a rape by force, and the evidence relied on to prove it tended to show that one of the three females in the house was awakened by something touching her foot, and, screaming, saw a man running away through an open door, *Held*, not sufficient to prove the intent alleged.

APPEAL from the District Court of Gonzales. Tried below before the Hon. EVERETT LEWIS.

The indictment charged that appellant, on July 20, 1880, in the county of Gonzales, and State of Texas, with force and arms did "unlawfully, feloniously and burglariously, about the hour of eleven o'clock at night of said day, enter by fraud the dwelling house of Mistress Ernstiene Gercheidle, there situate, with intent then and there unlawfully, feloniously and burglariously, and against the will and consent of Ernstiene Gercheidle, to ravish and carnally know, by force and by assaulting, the said Ernstiene Gercheidle; contrary," etc. The jury found the appellant guilty, and assessed his punishment at a term of seven years in the penitentiary.

The statement of facts is unusually concise, and will be found embodied in the opinion of this court. The charge given to the jury set forth the substance of the principal provisions of the Penal Code in the definitions of burglary at night and in the day-time, of rape, and of assaults, and then proceeded as follows: " 5. If the jury find the defendant guilty, as charged in the indictment, of entering the house with intent to commit the offense of rape, as charged in the indictment, either by force, threats, or fraud, they should assess his punishment at confinement in the penitentiary for a term of years not less than two nor more than twelve." The remainder of the charge expounded the presumption of innocence, the

functions of the jury as the judges of the evidence, and the doctrine of reasonable doubt.

At the instance of the defense, the jury were further instructed in substance that, to convict, they must believe beyond a reasonable doubt that the defendant, and no other person, entered the house as charged; that they must also believe that the entry was with the intent of committing the crime of rape as defined in the main charge; that, if they believed the entry was made for any other purpose than to rape, they must acquit, and if they had a well-founded doubt as to the defendant's intention they must acquit; and that they must believe, beyond a doubt, that he entered and committed the assault for the purpose of committing rape on Mrs. Gercheidle and no other person.

The court refused an instruction requested by the State to the effect that the entry of the house with the intent to rape was the gist of the offense, and would suffice whether the defendant, after entering the house, did or did not assault the lady.

The defense requested the following instructions:

" 1. By fraud is meant some device or artifice employed to gain admission into the house as alleged in the indictment, and unless you find that fraud was practiced in said entry you must acquit the defendant.

" 2. The jury are not permitted to presume what the defendant's purpose was in entering the house, but must find from the evidence introduced what the intention was; and if you have a doubt arising from the evidence as to the true intention of said defendant, then you should acquit the defendant."

These instructions were refused on the ground that the charges already given were sufficient.

No brief for the appellant has reached the Reporters.

*H. Chilton,* Assistant Attorney General, for the State.

HURT, J.   The appellant was convicted of burglary. Hamilton was charged by the indictment with entering a house by fraud, with intent to rape by force.   To sustain the conviction each of these allegations must be proved, namely, 1st, that the house was entered at night by fraud; 2nd, with the intent to rape by force.

As the door of the house was open, the first question presented is, was the house in such a condition as to be susceptible of burglary, by entering by *threats* or *fraud?* We think so.   But not by force.   Suppose the occupant had been near the door, though open, and the would-be burglar deceived him, pretending to be some one else, known to occupant to be friendly or harmless; or suppose, when met or seen at the door, he threatens the occupant, and by means of the threat an entry was obtained.   In these cases the fact that the door of the house was or was not open is of no consequence; the entry would be made in one of the modes denounced by the Code.

But if the entry is not made by threats or fraud, being obtained by force, what is meant by the term *force*, the entry being at night?   To the writer this is a troublesome question indeed.   Art. 704, Penal Code, defines burglary to be the entering a house by force at night with the intent of committing felony or theft.   We have eliminated from the definition "threats, fraud and the entry in the day time and remaining concealed," etc., with a view of narrowing and presenting the very point of discussion.   If A. enters a house at night by force, with intent to commit a felony or theft, he is guilty of burglary. The elements are, entering a house at night by force to commit felony or theft.   What is meant by the term "by force?"   Is it not an essential element?   Suppose that an indictment for burglary should charge that A. did enter the house at night of a certain person, naming him, without the free consent of said person or occupant

(omitting "by force"), with intent to commit felony or theft, would such an indictment be sufficient? It must be remembered that threats, fraud, and entering in the day time are not in the case, nor are we discussing the necessity of setting forth the constituent elements of the intended felony or theft. The term "by force" is the subject-matter or question under consideration.

By art. 705 he is also guilty of burglary who, with intent to commit a felony or theft, by breaking enters a house in the day time. Under art. 704 an entry *by force* will suffice, but under art. 705 an entry by breaking is necessary,— the reason the former being at night, and the latter in the day time. This would be satisfactory if it were not for the provisions of articles 706 and 708. Art. 706 provides: "The entry into a house, within the meaning of art. 704, includes every kind of entry but one made by the free consent of the occupant, or of one authorized to give such consent; it is not necessary that there should be any actual *breaking*, . . except when the entry is made in the day time." It plausibly appears from this article that an entry without the free consent of the occupant, etc., if at night, would answer, *without* force; and, if in the day time, an entry by *actual breaking* is necessary. But the conclusion that an actual breaking in the day time is required is not correct, for article 708, which defines "breaking" as used in article 705, provides that "the slightest force, however, is sufficient to constitute breaking; it may be by lifting the latch of the door that is shut, or by raising a window, the entry at a chimney or other unusual place, the introduction of the hand, or any instrument, to draw out the property through an aperture made by the offender for that purpose." That force which is required to raise the latch of a closed door constitutes a breaking,— not all the modes of breaking,— under arts. 705 and 706, when the entry is made in the day time.

If, then, the slightest force equals and constitutes not only breaking, but actual breaking, when the entry is made in the day time, what character or degree of force is necessary if the entry is made at night? Indeed, is there any degree of force required? Will not an entry at night without the free consent of the occupant be sufficient? Will not an indictment which charges an entry at night without the free consent of the occupant be sufficient?

Before answering this question, let us take a close view of these articles. They must be construed together, and made to harmonize, if possible. The object of each must not be lost sight of. Articles 704 and 705 define the offense. Articles 706 and 707 define entry. The object and purpose of these two articles is to define and illustrate that which constitutes an entry; the subject-matter upon which the mind of the legislator is acting and about which he is speaking being entry, and not force. Neither of the articles, to wit, 706, 707 and 708, pretends to treat of the term "by force," used in article 704. Article 708 discusses the subject of breaking, but does not refer to art. 704 at all. We therefore submit that, if there is no attempt made anywhere in the Code to define, modify or alter the ordinary legal meaning of the term "by force," it should remain just as we find it in art. 704. We are supported in this position by a number of considerations.

Burglary is composed, 1st, of entry; 2d, the means resorted to to effect the entry; 3d, the purpose or intent of the entry. And we find authors, ànd Supreme Courts in their opinions, treating at great length each of these subdivisions as separate and distinct matters. They propound the subjects. What is an entry; what is a breaking; what devices will amount to fraud, and what character of threats, etc. In the discussion of this subject not much light can be drawn from the common law, nor the decisions of other States, because burglary as de-

fined by our Code omits breaking except when committed
in the day time, while the common law and the statutes
of some of the States require the entry to be made by
breaking, or define the offense differently from ours.   At
common law burglary is the breaking and entering the
dwelling house of another in the night, with intent to
commit some felony within the same, whether the felo-
nious intent be executed or not.   Here, we see from the
language used, an actual breaking would be necessary;
but this is not the case, for, if an entrance were made by
some trick or device, this is considered a constructive
breaking, and so with threats, violence and so on.   We
are not driven to make these violent and latitudinous
constructions, for our Code provides that, if at night the
house is entered by *force, threats* or *fraud*, with certain
intents, burglary is complete.   It will be seen, however,
that if the house is entered in the day time with like in-
tent, to wit, to commit felony or theft, the entry must
be by breaking; an actual breaking is not, however, neces-
sary,— the slightest force will suffice.

But, to return: we have found that entry and the means
of entry are distinct, and are so considered by law.   We
have also shown that the several articles of the Code ex-
plain entry and breaking, but do not attempt to define,
modify or explain the term "by force."   We cannot
thereupon take the explanation of the terms entry,
breaking, and force them upon, and permit them to con-
trol and destroy, an essential element of the offense.   The
term "by force" must stand unless the indictment
charges fraud or threats.

There is another consideration which, we think, is con-
clusive in the matter.   The Code declares that burglary
is constituted by entering a house by force, *threats* or
*fraud*, at night, etc.   If the party is guilty of a burglari-
ous entry when he enters at night without the consent
of the occupant, why does the Code allude in any manner

to force, threats or fraud? The Code should have defined the offense as follows: Burglary is constituted by entering a house at night without the free consent of the occupant, or of one authorized to give such consent, with intent, etc. So far as the point of discussion is concerned, this would have been proper, and, to prevent a vast amount of confusion, absolutely demanded, if, indeed, an entry without the consent of the occupant was all that was necessary. We cannot believe that the Legislature of our State ever intended such an interpretation, nor that it is justly chargeable with such confusion. If we keep close in view the objects of each article, and give force and effect to each, this seeming confusion will disappear.

We therefore conclude that to constitute burglary at night, or in the day time, the entry must be by force, and to enter an open door at night, when the charge is *by force*, would not constitute the force required in the Code. If there was the slightest force necessary to effect the entry, this will suffice. To illustrate: Suppose the door is shut or slightly open, but not sufficient to admit the party, and he open it and enter; here there would be force, and the Code satisfied. We are treating of burglary at night. If, however, an entry is made at an unusual place, no force is necessary. We have thought proper to give to this subject a somewhat lengthy notice, because of the seeming conflict in the different articles in regard to this offense. The subject, however, is not exhausted.

We now return to the charge in this indictment. The entry is alleged to have been made by fraud. The evidence shows that defendant Hamilton removed his shoes from his feet, and entered at an open door. Did the fact that defendant removed his shoes constitute the fraud by which he obtained an entrance into the house? Who was deceived or imposed upon by this act? There was no necessity of resorting to fraud to effect an entrance; the

door being open, there was nothing to prevent his enter-
ing the house. The natural inference from this fact is
that the defendant removed his shoes to prevent detec-
tion, and not for the purpose of deceiving or imposing
upon the occupant, and thereby effect an entrance. That
allegation is utterly unsupported by the evidence.

The indictment charges that defendant entered the
house with intent to rape Mrs. Gercheidle, by force. Is
this allegation supported by the evidence? We here give
all the evidence, which is: "That in July, 1880, in the
town and county of Gonzales, State of Texas, the defend-
ant, Bud Hamilton, who was identified, was seen coming
from the direction of Mrs. Gercheidle's house, about eleven
o'clock at night. That he was halted, and found bare-
footed, with his shoes on his arm. That a light was pro-
cured and the track of defendant traced to the back door
of Mrs. Gercheidle's dwelling house, from where defend-
ant was arrested. It was further proved that the inhab-
itants sleeping in said house consisted of three men and
three women; that they were awakened by Mrs. Ger-
cheidle's screams, a few minutes before defendant's arrest;
and at the time of the arrest members of the household
were out hunting for the intruder. That Mrs. Gercheidle
was awakened by something touching her foot, and, as
she opened her eyes, screaming, she saw a man running
out of the back door, in a stooping posture. That she
could not identify the individual, as she only saw his
back, and no other member of the household saw anyone
in the house at the time. That the doors and windows
were all open, and that the moon was shining brightly.
That defendant did not have her consent to enter said
house, nor that of any other member of the family.
That the house is situated in the town and county of
Gonzales, and is the dwelling house of Mrs. Gercheidle,
as charged in the indictment."

The charge is that defendant entered by fraud, with

intent to rape by force. The jury found defendant guilty; thus declaring the above allegation to be true, and so found upon the above evidence. The court refused to grant a new trial. If there is the minutest circumstance tending in the remotest degree to indicate the intent with which defendant entered the house, we are too obtuse to perceive it. Mrs. Gercheidle was awakened by something touching her foot. Who touched her foot?—was it defendant? If so, was it intentional or an accident? With what intent (if intentional) did he touch the foot?—was it to rape, or carnally to know her with her consent? If to rape, was it to be effected by force, threats or fraud? If the touching was accidental, then what was the purpose of the defendant in entering the house? There were two other women in the house; did he not enter to rape one of them? For, if the touching of the foot of Mrs. Gercheidle was accidental, there is nothing to indicate her as the object of the entry. May he not have entered for the purpose of indecent proposals to one of the other ladies, or for the purpose of theft, murder, assault to murder— in fact, with intent to commit one or all of the felonies known to the law, which could have been committed in that house? We cannot answer, nor do we think any juror on earth can answer any of the above questions from the evidence. If he entered with intent to commit a felony, there is but one felony which we may with safety deny that defendant intended to commit, and that is the very one for which he is convicted, to wit, the entering the house with intent to rape Mrs. Gercheidle by force; for no one, unless he be a driveling idiot, ever expected to rape a woman *by force* without expecting her to resist; not only to resist, but to scream and continue to scream until overpowered, or suffocated by the ravisher. How was it with the defendant when the issue was presented—the very one which he knew would arise? He broke and rushed from the lady whom he in-

tended to ravish *by force ?* The evidence not only fails to support the charge that defendant's intent was to rape by force, but there is no evidence to point to the offense (if any) for which he entered the house.

To constitute burglary the house must have been entered with intent to commit felony or theft. The evidence in this case fails to indicate a felony. If felony, what felony? On the contrary, if the purpose was unlawful, we would presume the commission of a misdemeanor, rather than felony. Why? Because a great many more misdemeanors are committed than felonies; and for another reason,—"all presumptions are in favor of the defendant, when left to presumption." We are therefore of the opinion that the verdict of the jury is wholly unsupported by the evidence.

The court charged a great many abstract propositions of law germane to the subjects of burglary and rape. We would respectfully but most earnestly suggest that the charge be confined to the allegations in the indictment.

For the errors above noticed, the judgment is reversed and cause remanded.

*Reversed and remanded.*